UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

MASON LUBY,

          Plaintiff,          Case No. 2:25-cv-234

v.                                   Honorable Paul L. Maloney

MARQUETTE BRANCH PRISON et al.,

          Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Shortly after filing his initial complaint, Plaintiff filed a motion to amend (ECF No. 4), to which he attached his proposed amended complaint (ECF No. 4-1). Plaintiff is entitled to file his amended complaint as a matter of course. *See* Fed. R. Civ. P. 15(a)(1). Accordingly, the Court will grant Plaintiff's motion to amend (ECF No. 4) and direct the Clerk to file Plaintiff's amended complaint as a separate entry on the docket.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* amended complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they

are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim.

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which Plaintiff complains occurred there. Plaintiff sues MBP itself, as well as the following MBP personnel: Corrections Officers Unknown Skogman, Unknown Benner, and Unknown Koski; and Registered Nurses Katie and Joe. (Am. Compl., ECF No. 4-1, PageID.15.)

Plaintiff alleges that on June 4th, he cut his right hand open on the mirror in his cell. (*Id.*, PageID.16.) Plaintiff showed Defendant Benner that he was cut and bleeding when she was passing out lunch trays. (*Id.*) Defendant Benner said that she would let the healthcare department know. (*Id.*) At about 11:20 a.m., while Defendant Benner was collecting trays, Plaintiff showed her how bad he was bleeding. (*Id.*) At 1:20 p.m., Plaintiff stopped Defendant Koski during rounds to show Defendant Koiski how bad his hand was bleeding. (*Id.*) Defendant Koski told Plaintiff that "healthcare was notified so there [was] nothing else they c[ould] do." (*Id.*)

Defendant Joe came to look at Plaintiff's hand around 2:30 p.m. (*Id.*) He told Plaintiff that he needed stitches, but that the doctor would not be in until the next morning. (*Id.*) Defendant Joe "used medical glue and tape in an attempt to stop the flow of blood and close the wound." (*Id.*)

At around 3:30 p.m., Plaintiff stopped Defendant Benner and showed her that "the tape was no longer sticking together due to the amount of bleeding." (*Id.*) At the 4:00 p.m. count, Plaintiff stopped Defendant Skogman "to show how serious the wound was and again requested the appropriate medical care." (*Id.*)

At around 5:00 p.m., Plaitniff was taken "to the medical room in his unit to be looked at" by Defendant Katie. (*Id.*) Defendant Katie "tried to stop the bleeding and close the wound enough to wrap it up with tape." (*Id.*) Plaintiff avers "[t]his process took about 25–30 minutes [due] to intense bleeding." (*Id.*)

At 8:00 p.m., Plaintiff told Defendant Skogman that he had bled through the bandaging and was "still in severe pain and needed medical attention." (*Id.*, PageID.16–17.) Plaintiff was taken to the hospital at around 10:30 p.m. (*Id.*, PageID.17.) The doctor at the hospital told Plaintiff that "there was so much bleeding because [Plaintiff] had cut a minor artery and needed [five] stitches." (*Id.*)

Based upon the foregoing, Plaintiff asserts Eighth Amendment claims premised upon deliberate indifference to his serious medical needs. (*Id.*) He also asserts state law claims for gross negligence and intentional infliction of emotional distress. (*Id.*) Plaintiff seeks $2 million in damages. (*Id.*, PageID.18.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

      **A.**      **Section 1983 Claims**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

      **1.**      **Claims Against MBP**

As noted above, Plaintiff has named MBP itself as a Defendant in this action. An express requirement of 42 U.S.C. § 1983 is that the defendant be a "person." *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). MBP is an administrative unit of the Michigan Department of Corrections. Neither a prison nor a state corrections department is a "person" subject to suit under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989); *see also Anderson v. Morgan Cnty. Corr. Complex*, No. 15-6344, 2016 WL 9402910, *1 (6th Cir. Sep. 21, 2016) (ruling that a state prison and its "medical staff" were not subject to suit under § 1983);

*Parker v. Michigan Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003). Accordingly, Plaintiff's claims against MBP will be dismissed for failure to state a claim upon which relief may be granted.

### 2. Eighth Amendment Claims Against the Individual Defendants

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes, U.S. Const. amend. VIII, and the Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need that "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and

6

considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must demonstrate that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### a.    Objective Component

As to the objective component, Plaintiff alleges that he cut his hand on the mirror in his cell, and that it bled extensively for 12 hours, despite two attempts to glue and tape the wound shut. (Compl., ECF No. 1, PageID.3.) Plaintiff also sets forth that he was in extreme pain throughout those 12 hours, and that he ultimately needed stitches because he had cut a minor artery.

(*Id.*) Given these allegations, the Court concludes that the conditions Plaintiff describes in his complaint satisfy the objective component of the relevant two-prong test.

### b.   Subjective Component

Turning to the subjective component—i.e., the requirement that a plaintiff alleges sufficient facts to show that "the official [or medical provider was] both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and that the official or medical provider "also dr[e]w the inference," *Farmer*, 511 U.S. at 837—the Court addresses Plaintiff's allegations against each named Defendant below.

#### (i)   Defendants Skogman, Benner, and Koiski

It appears that Plaintiff believes that Defendants Skogman, Benner, and Koiski violated Plaintiff's Eighth Amendment rights premised upon the fact that he had to wait almost 12 hours to be taken to a hospital for stitches. However, administrative or custody officials, such as Defendants Skogman, Benner, and Koiski, who have no training or authority to supervise healthcare officials, cannot be held liable for allegedly inadequate care by a medical professional such as Defendants Joe and Katie. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (concluding that a custody officer was entitled to rely on the medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials).

In any event, the facts as alleged by Plaintiff regarding Defendants Skogman, Benner, and Koiski do not rise to the level of deliberate indifference to Plaintiff's medical needs. Instead, when Plaintiff first showed his hand to Defendant Benner, she told Plaintiff that she would notify healthcare. (Compl., ECF No. 1, PageID.3.) When Plaintiff spoke to Defendant Koiski, he told Plaintiff that healthcare had been notified. (*Id.*) When Plaintiff spoke to Defendant Skogman on the first occasion, he asked Defendant Skogman to call healthcare. (*Id.*) Defendant Skogman presumably did so because Defendant Katie came to re-wrap Plaintiff's hand. (*Id.*) Moreover, when Plaintiff later spoke to Defendant Skogman about the bleeding and pain, Plaintiff was taken to the hospital shortly thereafter. (*Id.*) Rather than showing deliberate indifference, these facts suggest that Defendants Skogman, Benner, and Koiski assisted Plaintiff to the extent that they were able.

Accordingly, for the foregoing reasons, Plaintiff's Eighth Amendment claims against Defendants Skogman, Benner, and Koiski will be dismissed.

### (ii) Defendants Joe and Katie

Plaintiff also seeks to hold Defendants Joe and Kate liable for violating his Eighth Amendment rights, presumably based upon the fact that the treatment they provided was inadequate because Plaintiff ultimately needed stitches for a cut minor artery.

Although it is clear from Plaintiff's complaint that he disagreed with Defendants Joe and Katie's course of treatment, which consisted of the use of medical glue, tape, and gauze to attempt to hold the wound shut, "a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605. Although Plaintiff alleges that Defendant Joe stated that Plaintiff likely needed stitches, but that the doctor would not be in until the next morning (Compl., ECF No. 1, PageID.3), Plaintiff's complaint is devoid of

9

facts suggesting that Defendants Joe and Katie, as Registered Nurses, had authority to treat Plaintiff with stitches in the absence of a doctor's presence.

In any event, "a complaint that a physician [or medical provider] has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 105–06. Here, even if Defendants Joe and Kate had the authority to treat Plaintiff's wound with stitches and instead chose the course of treatment provided, Plaintiff alleges, at best, that Defendants Joe and Katie were negligent. Plaintiff alleges no facts that support an inference that Defendants Joe and Katie were aware of a substantial risk of serious harm to Plaintiff or that Defendants Joe and Katie ignored such a risk. Negligence could support a state court cause of action for medical malpractice, but "errors in medical judgment or other negligent behavior" do not support an Eighth Amendment claim. *Rhinehart*, 894 F.3d at 738 (citing *Estelle*, 429 U.S. at 107– 08). Accordingly, for the foregoing reasons, Plaintiff's Eighth Amendment claims against Defendants Joe and Katie will also be dismissed.

### B. State Law Claims

#### 1. Gross Negligence

Plaintiff avers that Defendants are liable for committing the tort of gross negligence. (Am. Compl., ECF No. 4-1, PageID.17.)

In Michigan, gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *See* Mich. Comp. Laws § 691.1407(8)(a)."A claim for gross negligence must also establish the elements of ordinary negligence, i.e., duty, breach, causation, and damages." *Haag v. City of Dearborn*, No. 368569,

2025 WL 272940, at *3 (Mich. Ct. App. Jan. 22, 2025) (citing *Cummins v. Robinson Twp.*, 770 N.W.2d 421 (Mich. Ct. App. 2009)).

Here, Plaintiff suggests that Defendants committed gross negligence because they owed Plaintiff a duty of care and recklessly disregarded his health and safety. (Am. Compl., ECF No. 4-1, PageID.17.) However, Plaintiff's amended complaint is devoid of facts from which this Court could infer that any of the Defendants recklessly disregarded his health and safety. As discussed *supra*, Defendants Skogman, Benner, and Koski obtained medical treatment for Plaintiff throughout the day, and Defendants Joe and Katie treated Plaintiff's wound. Although Plaintiff appears to believe that he should have received stitches right away because he ultimately had to be taken to the hospital, none of the facts set forth in the amended complaint suggest that any of the Defendants engaged in "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *See* Mich. Comp. Laws § 691.1407(8)(a). Notably, Plaintiff sets forth no facts suggesting that he suffered any further injury to his hand because he did not receive stitches right away. The Court, therefore, will dismiss Plaintiff's claims of gross negligence.

### 2. Intentional Infliction of Emotional Distress

Plaintiff also contends that Defendants are liable for committing the tort of intentional infliction of emotional distress "by their outrageous conduct that caused Plaintiff severe emotional and physical distress and pain." (Am. Compl., ECF No. 4-1, PageID.17.)

In Michigan,

> "To establish a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Hayley v. Allstate Ins Co*, 262 Mich. App. 571, 577, 686 N.W.2d 273 (2004) (quotation marks and citation omitted). "The conduct complained of must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* (quotation marks and citation omitted). "It is for the trial court to initially determine

11

>whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Id.*

*Kosch v. Traverse City Area Pub. Schools*, --- N.W.3d ----, 2024 WL 3907351, at *14 (Mich. Ct. App. Aug. 22, 2024). Here, Plaintiff's amended complaint is devoid of facts from which this Court could infer that the conduct of any of the Defendants listed above rose to the level of "extreme and outrageous," nor does Plaintiff set forth any facts regarding any severe emotional distress that he suffered. Quite simply, the Court cannot conclude that these Defendants' conduct exceeded "all possible bounds of decency" from the facts set forth in Plaintiff's amended complaint. The Court, therefore, will dismiss Plaintiff's claims of intentional infliction of emotional distress.

## **Conclusion**

The Court will grant Plaintiff's motion to amend (ECF No. 4) and direct the Clerk to file Plaintiff's amended complaint as a separate entry on the docket. Moreover, having conducted the review required by the PLRA, the Court determines that Plaintiff's amended complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

An order and judgment consistent with this opinion will be entered.

Dated:   October 22, 2025                              /s/ Paul L. Maloney
                                                                          Paul L. Maloney
                                                                          United States District Judge